**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellant,

v.

JOHNNY BEGAY,

     Defendant-Appellee.

No. 09-2163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:CR–07-01556-MCA)**

---

David N. Williams, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellant.

Margaret A. Katze, Assistant Federal Public Defender, Office of Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **BRISCOE, McWILLIAMS,** and **TYMKOVICH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

In this interlocutory appeal, the government challenges the district court's

order dismissing with prejudice, pursuant to Fed. R. Crim. P. 48(b)(1), a

superseding indictment charging defendant Johnny Begay with multiple counts of

aggravated sexual abuse of a child in Indian Country, and directing the parties to proceed to trial on the original indictment, which charged Begay with a single count of aggravated sexual abuse of a child in Indian Country. Exercising jurisdiction pursuant to 18 U.S.C. § 3731, we reverse the decision of the district court and remand for further proceedings on the superseding indictment.

I

On July 25, 2007, a federal grand jury indicted Begay on one count of aggravated sexual abuse of a child in Indian County, in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(3). The indictment alleged that

> [b]etween on or about March 1, 2006, and April 30, 2006, in Indian Country, in San Juan County, in the State and District of New Mexico, the defendant, JOHNNY BEGAY, an Indian, knowingly engaged and attempted to engage in sexual contact with Jane Doe, an Indian child who had not attained the age of twelve years, and the sexual act consistent of intentional penetration of the genital opening of Jane Doe by a hand or finger or by any object with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

App., Case No. 08-2149, at 7.

In preparation for trial, the government filed a motion in limine seeking approval from the district court to introduce at trial, pursuant to Rule 414 of the Federal Rules of Evidence[1], evidence of three categories of prior sexual

---

[1] Rule 414, entitled "Evidence of Similar Crimes in Child Molestation Cases," provides, in pertinent part, that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is

(continued...)

molestation committed by Begay. The first category of proposed evidence involved testimony from the victim identified in the indictment, Jane Doe, regarding "previous sexual assaults" committed against her by Begay. Id. at 9. More specifically, the government indicated, Jane Doe would testify that Begay "assaulted her over twenty times" "when she was between the ages of 7 and 11." Id. The second category of proposed evidence involved testimony from Jane Doe regarding Begay's molestation of her younger sister, whom the government identified as Jane Doe #2. According to the government, Jane Doe would testify "that the defendant assaulted Jane Doe #2 on at least one occasion." Id. The third category of proposed evidence involved testimony from the mother of Jane Doe and Jane Doe #2 regarding Begay's molestation of her when she "was 11-12 years old." Id. The government indicated that the mother would testify that Begay "assaulted her three or four times." Id. at 10. The government argued that "[t]he manner of sexual assault in all previous instances" was "similar to the charged offense, in that the defendant sexually assaulted the victims at home, during the night while the victims were in bed and no other adults were present." Id.

Begay opposed the government's motion, arguing that "[a]ll the accusations [we]re extremely prejudicial," and that "[i]t [wa]s very likely they w[ould]

---

[1](...continued)
admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a).

contribute to an improperly-based verdict, distract the jury from the central issue of the truth of the indictment charge, and consume way too much time at trial." Id. at 15.

On July 2, 2008, the district court held a hearing on the government's motion, during which both Jane Doe and her mother testified. The following day, the district court issued a memorandum opinion and order denying the government's motion. Although the district court agreed with the government that the proposed evidence was relevant and admissible under Rule 414, it nevertheless concluded that each of the three categories of proffered evidence were more prejudicial than probative.

Immediately following issuance of the district court's order, the government filed an interlocutory appeal challenging that order. This court, in an unpublished order and judgment issued on February 9, 2009, affirmed the district court's order. United States v. Begay, No. 08-2149, 2009 WL 30828 (10th Cir. Feb. 9, 2009). This court's mandate issued on March 3, 2009.

On April 9, 2009, a federal grand jury returned a superseding indictment charging Begay with seven counts of aggravated sexual abuse of a child in Indian County, in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(c). All seven counts involved the same victim as the original indictment, Jane Doe, and all seven counts alleged that Begay "intentionally engaged in the penetration, however slight, of the [victim's] genital opening . . . by a hand or finger or by any

4

object with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."[2]  App. at 31-32.  The counts differed only in the dates of the alleged acts: (1) Count 1 allegedly occurred "between May 1, 2006, and May 31, 2006," id. at 31; (2) Count 2 allegedly occurred "between March 1, 2006, and April 20, 2006,"[3] id.; (3) Count 3 allegedly occurred "between January 29, 2006, and February 2, 2006," id. at 32; (4) Count 4 allegedly occurred "between January 29, 2006, and February 2, 2006," id.; (5) Count 5 allegedly occurred "between June 28, 2004, and July 5, 2004," id. at 33; (6) Count 6 allegedly occurred "between December 1, 2003, and December 31, 2003," id.; and (7) Count 7 allegedly occurred "between August 1, 2000, and August 31, 2000," id.

On April 27, 2009, Begay moved to dismiss the superseding indictment "with prejudice . . . on the grounds that the government engaged in excessive delay in obtaining that indictment, warranting dismissal by virtue of the Due Process Clause and Federal Rule of Criminal Procedure 48(b)(1)."  Id. at 35.  According to Begay, "[t]he superseding indictment [wa]s a blatant attempt to circumvent [the district court's] ruling . . . that the government would not be allowed to introduce evidence of [his] alleged sexual contact with Jane Doe

_____

[2] The superseding indictment did not include any counts regarding any alleged molestation by Begay of Jane Doe's sister or mother.

[3] Count 2 represents the count from the original indictment, albeit with a slightly narrowed time frame.

outside the two-month time period alleged in the original indictment." Id. at 36.

Begay further argued that "[t]he government could have brought the superseding-indictment charges at the same time as it brought the single charge in the original indictment," but that "[i]t delayed doing so for more than a year and a half to garner a tactical advantage in its prosecution of [him]." Id. Lastly, Begay argued that he was prejudiced by the government's tactics:

> With the superseding indictment in place, . . . Begay now faces the same unfairly prejudicial circumstances he faced when the government sought to introduce Jane Doe's allegations that . . . Begay sexually assaulted her over the course of six years on multiple occasions. Cumulative charges may very well lead the jury to believe . . . Begay is guilty of something. The very real danger exists that the piling on of allegations upon allegations will overwhelm the jury and result in an unwarranted guilty verdict on one or more of the counts. The government will then doubtless attempt to obtain enhancement of . . . Begay's sentence by virtue of the conduct alleged in any acquitted counts. In addition, while not by itself substantial prejudice, the inevitably fading memories of the defense witnesses regarding the allegations that reach back to 2000, also impedes . . . Begay's defense. The more-than-two-and-half-year [sic] delay has enabled the government to create this situation that has substantially increased the chance of a guilty verdict, despite . . . Begay's innocence.

Id. at 44.

The district court held a hearing on Begay's motion on June 8, 2009, and then took the matter under advisement. On June 18, 2009, the district court issued a memorandum opinion and order granting Begay's motion. The district court noted that the government had conceded at the hearing on Begay's motion "that the information underlying the allegations that ma[d]e up the seven counts

6

of the [superseding indictment] [wa]s information that was known to it as early as September 14, 2006, the date of Jane Doe's forensic interview." Id. at 83. In turn, the district court concluded that

> common sense dictate[d] that if the government believed it had evidence to support the additional six counts that appear in the [superseding indictment], it would have charged all seven counts in the original [indictment] instead of seeking the admission of these alleged prior instances of sexual abuse under Rule 414, and then recasting them as charged offenses only after an unsuccessful appeal.

Id. at 84.

Turning to Begay's legal arguments, the district court first concluded that, notwithstanding its findings regarding the government's conduct, Begay had failed to show "that he ha[d] suffered actual prejudice from the [government's] delay, such that the [superseding indictment] [could] be dismissed on due process grounds." Id. at 85. However, the district court concluded "that because the government ha[d] engaged in unnecessary delay in presenting to a grand jury the charges comprising the [superseding indictment], the [superseding indictment should] be dismissed pursuant to Rule 48(b)(1) of the Federal Rules of Criminal Procedure, as [it] [wa]s simply not persuaded the government's reasons for the delay [we]re valid." Id. at 86 (citing United States v. Goodson, 204 F.3d 508, 513 (4th Cir. 2000)). In support of this conclusion, the district court stated it was "not persuaded that investigative delay [wa]s what kept the government from superseding the indictment until after it experienced an unsuccessful appeal;

7

rather, [it] believe[d] that the delay was undertaken to gain a tactical advantage over . . . Begay." Id. at 87. In other words, the district court stated it was "not convinced that the government delayed superseding the [indictment] for any reason other than to preserve for itself a weapon to use against . . . Begay in the event its motion to introduce evidence of alleged prior instances of sexual abuse, and the subsequent appeal from the denial thereof, fell short, which is precisely what happened." Id. at 89.

Based upon its findings and conclusions, the district court dismissed the superseding indictment "pursuant to Rule 48(b)(1) of the Federal Rules of Criminal Procedure" and directed that the trial "proceed upon the original one-count [indictment] of July 25, 2007." Id.

II

The government has filed this interlocutory appeal to challenge the district court's dismissal of the superseding indictment under Federal Rule of Criminal Procedure 48(b)(1). That Rule provides, in pertinent part, that "[t]he court may dismiss an indictment . . . if unnecessary delay occurs in . . . presenting a charge to a grand jury . . . ." Fed. R. Crim. P. 48(b)(1). "A dismissal under Rule 48(b), whether it be on motion or sua sponte, is a matter addressed to the sound discretion of the trial court . . . ." United States v. Barney, 550 F.2d 1251, 1254

(10th Cir. 1977).[4]  Consequently, we review the district court's decision in this case for an abuse of discretion.  Id.

The phrase "unnecessary delay," as used in Rule 48(b), is not specifically defined in Rule 48 or elsewhere in the Federal Rules of Criminal Procedure.  But the Advisory Committee Notes accompanying the adoption of Rule 48 are instructive in helping us understand the meaning of this phrase.  Those Notes indicate that Rule 48(b) was intended as "a restatement of the inherent power of the court to dismiss a case *for want of prosecution*."  1944 Advisory Committee Notes on Adopting Rule 48 (emphasis added).  In other words, the Advisory Committee did not intend Rule 48(b) as an all-encompassing grant to district courts of supervisory authority over the prosecution of criminal cases, but rather as a recognition of a district court's power to dismiss a case that the government has failed to prosecute in a timely manner.  Cf. Carlisle v. United States, 517 U.S. 416, 426 (1996) ("Whatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure.").  Construed in this manner, Rule 48(b)(1) is consistent with the well established rule that, "[a]bsent prejudice to the defendant, a superseding indictment may be filed at any time before trial," United

---

[4] "[M]uch of the case law applying Rule 48 standards predates the Speedy Trial Act," which was "adopted in 1975[, became] fully effective in 1980, [and] created a rather comprehensive set of rules to regulate delay in federal prosecutions."  3B Charles Alan Wright, Nancy J. King, and Susan R. Klein, Federal Practice and Procedure, § 814 at 343 (3d ed. 2004).

9

States v. Wilks, 629 F.2d 669, 672 (10th Cir. 1980); see United States v. Trahan, 333 F. App'x 818, 819, 2009 WL 1576839 at *1 (5th Cir. June 5, 2009) (concluding that the discretion afforded a district court by Rule 48(b) is necessarily "constrained by long-standing authority holding that a superseding indictment may be filed at any time before trial on the merits."), and is appropriately deferential to the "core executive constitutional function" of designing and pursuing criminal prosecutions. United States v. Armstrong, 517 U.S. 456, 465 (1996).

In purporting to exercise its authority under Rule 48(b)(1), the district court in this case determined that the government had delayed in obtaining the superseding indictment against Begay because "the information underlying the allegations" of the superseding indictment "was known to [the government] as early as September 14, 2006, the date of Jane Doe's forensic interview." App. at 83. The district court further found "that the government delayed obtaining the [superseding indictment] in an effort to gain a tactical advantage over . . . Begay," i.e., "it was not until" the government's motion in limine was denied by the district court and that ruling affirmed on appeal "that the government superseded the indictment, recasting at least some of th[e] alleged prior instances as charged offenses." Id. at 82. Although the district court found that Begay failed to establish "that he ha[d] suffered actual prejudice from the [government's] delay" in filing the superseding indictment, id. at 85, it nevertheless dismissed the

10

superseding indictment with prejudice because it was "not persuaded the government's reasons for the delay [we]re valid," id. at 86.

Accepting the district court's factual findings as correct, we conclude the district court abused the discretion afforded to it under Rule 48(b)(1) in dismissing the superseding indictment. Although it is true that the government "delayed" seeking the superseding indictment in the sense that it had been privy for some time to the evidence underlying each count of the superseding indictment, nothing in the record establishes that this was the type of "unnecessary delay" envisioned by Rule 48(b)(1). To the contrary, the record firmly establishes that the government has aggressively, but fairly, pursued the prosecution of Begay.

Further, the district court offered no authority for its conclusion that it was improper for the government to respond in a tactical manner after its unsuccessful interlocutory challenge to the district court's denial of its motion in limine. And, indeed, the case law clearly supports a contrary conclusion. "Prosecutorial charging decisions," "rarely simple" in nature, "are not readily susceptible to the kind of analysis the courts are competent to undertake . . . ." Town of Newton v. Rumery, 480 U.S. 386, 396 (1987) (internal quotation marks omitted). Consequently, the Supreme Court has repeatedly emphasized that courts are not "permit[ted] . . . to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment," or "to impose on law

11

enforcement officials [their] personal and private notions of fairness . . . ." United States v. Lovasco, 431 U.S. 783, 790 (1977) (internal quotation marks omitted). Likewise, we have emphasized that it is the prerogative of "the executive branch to design a criminal prosecution in the way it deems most prudent." United States v. Schneider, 594 F.3d 1219, 1226 (10th Cir. 2010).

To be sure, dismissal of a superseding indictment can be based upon prosecutorial vindictiveness in seeking heightened charges.[5] See United States v. Wall, 37 F.3d 1443, 1447 (10th Cir. 1994) ("In a claim of prosecutorial vindictiveness, the defendant bears the burden of proving either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness.") (internal quotation marks omitted); see also United States v. Barner, 441 F.3d 1310, 1316 (11th Cir. 2006) (holding that "proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption [of vindictiveness] in the *pretrial* context.") (internal quotation marks omitted; emphasis in original). At no point in this case, however, did Begay allege, nor did the district court find, that the government acted vindictively in obtaining the superseding indictment. Thus, the district court's order of dismissal was clearly not grounded on prosecutorial vindictiveness.

---

[5] Proof of vindictiveness in obtaining a superseding indictment would establish a due process violation. See United States v. Goodwin, 457 U.S. 368, 384 (1982).

12

In sum, it was entirely proper for the government, absent prosecutorial vindictiveness or prejudice to Begay, to alter its tactics in response to the rulings on its proffered Rule 414 evidence and seek a superseding indictment that included additional charges of molestation.

The order of the district court dismissing the superseding indictment with prejudice is REVERSED and the case REMANDED for further proceedings on the superseding indictment.